FILED
2009 Jul-24 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2009 JUL 23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
(Western Division)

| | | |
|---|---|---|
| LAURA WHITTEN, | ) | |
| | ) | |
| PLAINTIFF, | ) | CV-09-JEO-1474-W |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. _____ |
| THE GUARDIAN LIFE INSURANCE | ) | |
| COMPANY OF AMERICA; and LIFE | ) | |
| INSURANCE COMPANY OF NORTH | ) | |
| AMERICA, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

COMES NOW, the Plaintiff Laura Whitten and in support of her Complaint says as follows:

### Facts Common to All Counts

1. The Plaintiff Laura Whitten is a disabled individual who, at relevant times was employed as an office manager with Xserv, Inc. (hereafter "Xserv") which is sometimes referred to as United Scaffolding.

2. Xserv provided long term disability benefits to the Plaintiff through a group long term disability plan for employees of Xserv (hereafter "the Plan").

3. Xserv provided long term disability benefits through the Guardian Life Insurance Company of North America (hereafter "Guardian") for claims arising on July 1, 2006 or later. For claims arising prior to that date, Xserv provided long term disability benefits to employees through the Life Insurance Company of North America (hereafter "LINA"). Both of these insurance companies do business in the counties comprising the Northern District of Alabama.

4. On January 20, 2005, the Plaintiff was injured in a serious automobile accident. In particular, she suffered a comminuted fracture of the right distal radius of her right hand. She also suffered right elbow pain and chest wall pain. The Plaintiff required surgery and a titanium plate was put in her hand. The Plaintiff is right hand dominant.

5. As a result of these injuries, the Plaintiff developed chronic pain and difficulty in using her right hand. Activity with this hand aggravates the pain.

6. The Plaintiff's position as an office manager required bimanual dexterity as she was required to work on a computer, take notes and messages, carry objects such as files which exceeded 10 pounds, and generally use both hands the entire work day. Furthermore the Plaintiff's position also required her to think with clarity, analyze and train employees.

7. The Plaintiff returned to work after her accident and attempted to continue to perform her own occupation. The Plaintiff's supervisor noticed that the Plaintiff was unable to perform her job because of injuries to her hand and wrist. He took away job duties to allow the Plaintiff to have time to reach maximum medical improvement and then ascertain whether she could continue with her employment.

8. Other than working, the Plaintiff had no other means of financially supporting herself and her minor daughter. The Plaintiff struggled against the pain and physical difficulties in attempting to continue to work.

9. The Plaintiff was physically incapable of performing her own occupation and was physically incapable of working full-time even with limited duties. During April or May 2006 the Plaintiff ceased efforts to work full-time, although Xserv paid her salary to allow further time to recover. The Plaintiff did not recover the ability to work full-time with reasonable continuity.

10. In September 2006, the Plaintiff contacted her employer regarding long term disability benefits and she was instructed to forward her application to Guardian. Unbeknownst to the Plaintiff at that time, Xserv had switched carriers from LINA to Guardian on July 1, 2006, which was during the time period the Plaintiff was struggling and unable to perform her own occupation with reasonable continuity.

11. On or about September 15, 2006, the Plaintiff's employment with Xserv terminated due to her inability to perform her own occupation or work full-time in any modified occupation. The Plaintiff filed a claim for long term disability benefits with Guardian on or about September 22, 2006.

12. Guardian acknowledged receiving the long term disability claim on or about October 25, 2006. Guardian repeatedly stated in subsequent letters that it was waiting for an attending physician statement and other information from the employer in various letters. Guardian overlooked the fact that the Plaintiff submitted an attending physician statement with her initial application for long term disability benefits. This attending physician statement was acknowledged as being received by Guardian as it was stamped on October 19, 2006. Nonetheless, Guardian denied the Plaintiff's claim for long term disability benefits on or about March 6, 2007 because it had not received the "requested information" even though the information had actually been received.

13. On June 12, 2007, the Plaintiff appealed the decision of Guardian refusing to pay long term disability benefits and by way of further correspondence submitted a functional capacity evaluation ("FCE"), medical records, photographs, and deposition excerpts from the supervisor of the Plaintiff documenting his own observations of the Plaintiff's inability to perform her

job over an extended time period. The licensed occupational therapist who performed the FCE, stated in an affidavit and under oath that "Laura Whitten's injury to her right wrist will prevent her from working at United Scaffolding, or any similar job, on a full-time basis. I recommend that Ms. Whitten work no more than six hours per day with rest breaks every two hours." Alternatively, it was recommended that if the Plaintiff was required nonetheless to work an eight hour day "that she take a rest break of 10 minutes every hour."

14. The medical records submitted for this recorded these restrictions and limitations and documented the Plaintiff's inability to perform her own occupation.

15. Nonetheless, by way of letter dated August 22, 2007, Guardian again denied the Plaintiff's claim because "it was determined that her file lacked medical certification and medical documentation supporting her inability to perform the major duties of her own occupation." The letter failed to rebut the evidence submitted by the Plaintiff or provide any understandable reason why the claim was denied. Furthermore, the letter misinterpreted an attending physician statement which had been submitted.

16. Guardian failed to conduct a full and fair review of the claim and its decision was wrong and unreasonable.

    a.    The Plaintiff presented substantial evidence that she was disabled and Guardian failed to provide any evidence to rebut this medical evidence. Sworn testimony from Dr. Meyer, a treating physician, was presented in further support of the medical evidence and to further show that Guardian had improperly misinterpreted his attending physician statement.

    b.    Guardian also ignored the functional capacity exam and further ignored the sworn deposition testimony of the Plaintiff's supervisor.

    c.    Guardian ignored pain, which was well corroborated and observed by a supervisor in this instance. Guardian also misrepresented medical evidence provided by the Plaintiff's treating physician.

    d.    Guardian also refused to provide plan documents as required by law.

    e.    Guardian refused to consider a vocational report.

17.    The Plaintiff made a final demand on Guardian and in response, Guardian hired a physician reviewer who stated, without observing the Plaintiff, that she could perform eight hours a day of work as long as 10 minute rest breaks

were given every hour. This misconstrued the opinion of the occupational therapist in the FCE which reflected that the Plaintiff could not work full time and which was also demonstrated and observed with actual work attempts.

18. Guardian also sought a biased vocational opinion, which implied that the Plaintiff actually could find an employer who would accommodate 10 minute breaks every hour and lifting restrictions, and opined that there were computer devices and ergonomic devices that would minimize the Plaintiff's right hand usage. This vocational opinion also ignored eye witness testimony of the Plaintiff's inability to work and such testimony came from a supervisor for the plan administrator. Such vocational testimony also failed to account for the fact that the Plaintiff would suffer a decline in earnings with such accommodations.

19. Finally, in response to the Plaintiff's final demand, and in a last effort to support a refusal to pay benefits, Guardian claimed that the Plaintiff was not performing the major duties of her regular occupation on or before July 1, 2006 and therefore she was not eligible for coverage with Guardian. By implication, her claim should be made with the prior carrier, LINA. This was the first time this matter was argued.

20. The Plaintiff then provided Guardian a report from a vocational consultant who found that the vocational opinion provided by Guardian had completely ignored pain, even though the AMA Guides to the Evaluation of Physical Impairment reflected that pain should be taken into account. Furthermore, a clinical assessment of pain and statement from the Plaintiff's treating physician indicated that the pain was present to such an extent as to be distracting from adequate performance of daily activities or work. This vocational consultant opined that given the medically imposed restrictions, the effects of medications, and the effect of the claimant's pain, the Plaintiff was unable to perform with any reasonable continuity, any form of gainful employment. This was consistent with the actual work performance observed by the supervisor at Xserv as well as a supervisor at the Department of Human Resources, a lower paid position the Plaintiff attempted.

21. Guardian acted as an adversary in the claims process rather than as a fiduciary legitimately weighing the evidence. It shifted its reason to deny the claim at every stage in the process.

22. Thereafter, and in order to protect her rights the Plaintiff promptly filed a claim with LINA. The definition of disability under the LINA policy was as follows:

> "An Employee is Disabled if because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, is unable to earn more than 80% of his or her Indexed Covered Earnings."

23. The Plaintiff, due to her financially destitute circumstances, repeatedly sought employment, but was only able to find employment with the Department of Human Resources Food Stamp Offices. It was willing to attempt to accommodate her restrictions. The position involved receptionist/secretarial type duties and was a much lower paid position. The Plaintiff was provided with a hands free headset to attempt to relieve some of the repetitive motions regarding the telephone duties and she avoided taking her medications in a timely manner in order to avoid cognitive interference with her job duties.

24. Nonetheless, after two months, it was obvious to the supervisor of the Plaintiff that she was not physically capable of performing her job. Furthermore, the job did not pay sufficient monies to cause the Plaintiff to receive in excess of 80% of her previous indexed covered earnings. This information was provided to LINA along with all information provided to Guardian.

25. By way of letter dated March 6, 2009, LINA refused to pay benefits to the Plaintiff. LINA argued that if the Plaintiff ceased full-time work in April or May of 2006, then she would not have satisfied the benefit waiting period of 90 days until approximately the end of June/July 2006. Therefore she would not be covered by LINA as of July 1, 2006.

26. The Plaintiff appealed this determination by way of letter dated April 2, 2009 and it was pointed out that notwithstanding the date that the Plaintiff ceased to be able to work, she ceased to be able to perform her regular occupation on a full-time basis well before that date and therefore, the disability claim was proper.

27. The fact that the Plaintiff continued to try to work while disabled has been unfairly utilized against her. LINA's interpretation of its policy was flawed given the fact that the date that the Plaintiff became disabled was relevant as to when a long term disability claim was incurred, rather than whether LINA was responsible for coverage after the 90 day waiting period. LINA has not pointed to any such policy requirement.

28. After the Plaintiff's appeal, LINA delayed making a decision within 45 days and failed to establish good cause to allow an extension of time. LINA finally sent a letter dated June 16, 2009 and at that point, and as pointed out

in a letter to LINA dated May 29, 2009, the time frame for making the decision had passed and therefore the claim had been deemed exhausted.

29. Before LINA made its decision and by way of letter dated March 9, 2009, the Plaintiff requested LINA to produce a copy of the claim manual and all guidelines, protocols, or directives, so it could understand LINA's claims handling. LINA refused to produce the claim manual, guidelines, protocols or directives. This request was made again on April 28, 2009 and again on May 29, 2009. LINA refused to produce this document at any point in time.

30. A request was also previously made on Guardian on February 28, 2008 to produce its statement of policy or guidance with respect to the plan along with its claim manual and all documents or records or other information relevant to the Plaintiff's claim for benefits. This request was again made on October 1, 2008. Guardian refused to produce its claim manual, guidelines, protocols, or directives relevant to its claims handling.

31. The Plaintiff was found disabled from performing any occupation by the Social Security Administration, which further reflects the conflict of Guardian as well as LINA.

32. The Plaintiff has exhausted all administrative remedies as to both Guardian and LINA and as to all claims in this complaint.

33. Due to the Plaintiff being placed in this difficult posture, both insurers are joined as Defendants so it can be finally ascertained which insurer is responsible for the claim.

## COUNT ONE

34. The Plaintiff incorporates hereby reference Paragraphs 1 through 33 of this Complaint as if set out in full.

35. This Count is brought under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover benefits, damages, and attorney's fees as may be recoverable under this code provision and 29 U.S.C. § 1132(g). The Plaintiff seeks to enforce her rights under the Plan in question. The Plan is an employee benefit plan that appears to be regulated by the Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. § 1001 *et seq.*

36. As set forth above, Defendant LINA wrongfully, and in violation of obligations under ERISA, denied the Plaintiff's claim for long term disability benefits. The Plaintiff has failed to receive long term disability benefits under the Plan.

**WHEREFORE**, the Plaintiff demands judgment against Defendant LINA as follows:

a. For the sum of all past due long term disability benefits;

b. For reinstatement of the Plaintiff's claim to all present and future

        disability benefits under the Plan;

c.    For an award of attorney's fees;

d.    For interest on all past due benefits;

e.    For such other further or different relief as may be just and proper under 29 U.S.C. § 1132(a)(1)(B).

## COUNT TWO

37. The Plaintiff incorporates hereby reference Paragraphs 1 through 33 of this Complaint as if set out in full.

38. The Plaintiff seeks penalties under 29 U.S.C. § 1132(c) for wrongful refusal to provide information requested and as required by ERISA and relevant regulations.

39. Defendant LINA had an obligation as an entity assuming the duties of "any administrator" or as the "*de facto*" administrator to comply with requests for information, which it was required by law to be furnished under 29 U.S.C. § 1132(c). Under 29 U.S.C. § 1029, the Secretary of Labor prescribes what documents must be furnished. Under 29 C.F.R. § 2560.503-1, the participant is entitled to have reasonable access to all information relevant to a claim for benefits. Defendant LINA has breached these duties.

40. As set forth above, the Plaintiff repeatedly requested from LINA, in writing, the following documents: the claim manual; any information that was

submitted, considered, generated, or relied upon in making the benefit determination; and any information that constitutes a statement of policy or guidance with respect to the plan.

41. This information was known to Defendant LINA and is believed to be in the possession of Defendant LINA. Defendant LINA was acting as an agent of Xserv and/or as the *de facto* plan administrator. This information was needed by the Plaintiff to both understand how Defendant LINA was handling the Plaintiff's claim and ensure that the Plaintiff could address seemingly adverse information.

42. Defendant LINA refused to produce the documents requested and its actions in failing to provide the requested documents constitute a breach of fiduciary duty and further constitute a violation of ERISA § 502(c) subjecting Defendant to penalties in an amount up to $110.00 per day.

**WHEREFORE**, the Plaintiff demands judgment against Defendant LINA as follows:

    a.    For an award of penalties of $110.00 per day for each day Defendant LINA failed to produce "plan documents" as required to be produced by 29 U.S.C. § 1024(b)(4) and as interpreted by the Department of Labor in Advisory Opinion 96-14A (July 31, 1996), and running until such time as this Court concludes that Defendants have complied with

       their obligations;

  b.    For an award of attorney's fees;

  c.    For such other further relief as may be just and proper under 29 U.S.C. 1132(c).

## COUNT THREE

43.    The Plaintiff incorporates hereby reference Paragraphs 1 through 33 of this Complaint as if set out in full.

44.    This Count is brought under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover benefits, damages, and attorney's fees as may be recoverable under this code provision and 29 U.S.C. § 1132(g). The Plaintiff seeks to enforce her rights under the Plan in question. The Plan is an employee benefit plan that appears to be regulated by the Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. § 1001 *et seq.*

45.    As set forth above, Defendant Guardian wrongfully, and in violation of obligations under ERISA, denied the Plaintiff's claim for long term disability benefits. The Plaintiff has failed to receive long term disability benefits under the Plan.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Guardian as follows:

  a.    For the sum of all past due long term disability benefits;

b.  For reinstatement of the Plaintiff's claim to all present and future disability benefits under the Plan;

c.  For an award of attorney's fees;

d.  For interest on all past due benefits;

e.  For such other further or different relief as may be just and proper under 29 U.S.C. § 1132(a)(1)(B).

## COUNT FOUR

46. The Plaintiff incorporates hereby reference Paragraphs 1 through 33 of this Complaint as if set out in full.

47. The Plaintiff seeks penalties under 29 U.S.C. § 1132(c) for wrongful refusal to provide information requested and as required by ERISA and relevant regulations.

48. Defendant Guardian had an obligation as an entity assuming the duties of "any administrator" or as the "*de facto*" administrator to comply with requests for information, which it was required by law to be furnished under 29 U.S.C. § 1132(c). Under 29 U.S.C. § 1029, the Secretary of Labor prescribes what documents must be furnished. Under 29 C.F.R. § 2560.503-1, the participant is entitled to have reasonable access to all information relevant to a claim for benefits. Defendant Guardian has breached these duties.

49. As set forth above, the Plaintiff repeatedly requested from Guardian, in writing, the following documents: the claim manual; any information that was submitted, considered, generated, or relied upon in making the benefit determination; and any information that constitutes a statement of policy or guidance with respect to the plan.

50. This information was known to Defendant Guardian and is believed to be in the possession of Defendant Guardian. Defendant Guardian was acting as an agent of Xserv and/or as the *de facto* plan administrator. This information was needed by the Plaintiff to both understand how Defendant Guardian was handling the Plaintiff's claim and ensure that the Plaintiff could address seemingly adverse information.

51. Defendant Guardian refused to produce the documents requests and its actions in failing to provide the requested documents constitute a breach of fiduciary duty and further constitute a violation of ERISA § 502(c) subjecting Defendant to penalties in an amount up to $110.00 per day.

    **WHEREFORE**, the Plaintiff demands judgment against Defendant Guardian as follows:

    a.  For an award of penalties of $110.00 per day for each day Defendant Guardian failed to produce "plan documents" as required to be produced by 29 U.S.C. § 1024(b)(4) and as interpreted by the

Department of Labor in Advisory Opinion 96-14A (July 31, 1996), and running until such time as this Court concludes that Defendants have complied with their obligations;

b. For an award of attorney's fees;

c. For such other further relief as may be just and proper under 29 U.S.C. 1132(c).

*David P. Martin*
**David P. Martin**
**(ASB-3500-M68D)**
**David P. Martin, LLC**
**Attorneys for Plaintiff**
3601 Watermelon Road
Northport, AL 35473
Phone (205) 343-1771
Facsimile (205) 343-1781
Davidpmartin@erisacase.com
Davidpmartinesq@att.net

## Request for Service by Certified Mail

The Plaintiff requests service of this Complaint on the Defendants by certified mail, restricted delivery, return receipt requested.

*David P. Martin* (signature)

David P. Martin (ASB-3500-M68D)

## Plaintiff's Address:

Laura Whitten
9090 Beaver Lake Lane
Wilmer, AL 36587

## Defendants' Addresses:

The Guardian Life Insurance Company of America
c/o CSC Lawyers, Inc.
150 South Perry Street
Montgomery, AL 36104

Life Insurance Company of North America
c/o CT Corporation System
2000 Interstate Park, Suite 204
Montgomery, AL 36109